JD:DJL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONES ASSIGNED CALL NUMBERS (646) 972-0786 AND (646) 972-7232 | **Filed Under Seal**<br><br>**APPLICATION FOR A SEARCH WARRANT FOR HISTORICAL AND PROSPECTIVE CELL-SITE INFORMATION**<br><br>Case No. 18-MC-2793 |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION
FOR A SEARCH WARRANT FOR PROSPECTIVE CELL-SITE INFORMATION**

I, William Puskas, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephones assigned call numbers: (a) (646) 972-0786 ("Target Cell Phone 1"), whose service provider is Metro PCS, a wireless telephone service provider headquartered in Richardson, Texas and (b) (646) 972-7232, whose service provider is Metro PCS, a wireless telephone service provider headquartered in Richardson, Texas ("Target Cell Phone 2" and collectively the "Target Cell Phones"). The Target Cell Phones are described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. I am a Task Force Officer with the Federal Bureau of Investigation. I have participated in numerous investigations during which I have conducted physical and electronic surveillance, executed court-authorized search warrants, debriefed cooperating

witnesses and victims, reviewed and analyzed numerous taped conversations of those engaged in narcotics trafficking, and monitored wiretapped conversations and reviewed line sheets prepared by wiretap monitors. Through my training education and experience, I have become familiar with the manner in which robbery schemes are carried out and the efforts of persons involved in each activity to avoid detection by law enforcement.

3. I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file; and from reports of other law enforcement officers involved in the investigation. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 924(c) and 1951(a) as well as Title 21, United States Code, Section 841, have been committed, are being committed, and will be committed by Sean Hewitt and others known and unknown. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offense.

## PROBABLE CAUSE

5. The United States is investigating armed robberies of a pharmacy located at 8823 Avenue L, Brooklyn New York on March 2, 2018 (the "Pharmacy Robbery") and a gas station located at 8930 Avenue D, Brooklyn, New York on March 5, 2018 (the "Gas Station

Robbery"). The investigation concerns possible violations of, inter alia, Title 18, United States Code, Sections 1951 and 924(c).

6. On or about March 5, 2018, two male perpetrators approached a gas station located at 8930 Avenue D, Brooklyn, New York, while one of the employees of the gas station ("Employee-1") was pumping gas into the vehicle of an off-duty NYPD officer (the "Officer"). Another employee of the gas station ("Employee-2") was in the "island" booth at the gas station.

7. One of the perpetrators ("Robber-1") approached Employee-1 and stated, in sum and substance and in part, "don't fucking move."

8. The other perpetrator, later identified as William Simon, approached Employee-2, held a firearm by the side of his leg, and demanded, in sum and substance and in part, that Employee-2 give him money. Employee-2 responded, in sum and substance and in part, that he did not have money. Simon patted down Employee-2, then attempted to strike Employee-2 with his hand.

9. At or around the time that Simon was attempting to strike Employee-2, Robber-1 told Simon, in sum and substance and in part, that it was time to "bounce."

10. During the attempted robbery, the Officer fired his weapon at the perpetrators, striking William Simon. Robber-1 fled the scene.

11. Simon was pronounced dead shortly thereafter. A silver firearm was recovered from the ground underneath Simon's legs, as well as a black iPhone 7+ from Simon's personal effects and clothing brought with Simon to the hospital.

3

12. In the course of the investigation of the Gas Station Robbery, law enforcement learned of the Pharmacy Robbery which law enforcement has reason to believe was committed by the same two individuals. Law enforcement reviewed surveillance video of the Pharmacy Robbery which revealed that one of the individuals brandished a large silver revolver. Officers recovered a large silver revolver – a Ruger .44 caliber revolver – from under the body of William Simon following the Gas Station Robbery.

13. The investigation has revealed that:

   a. Target Number 1 belongs to Sean Hewitt according to Facebook subscriber records;

   b. Target Number 2 also belongs to Sean Hewitt based on Facebook subscriber records.

14. The investigation has further revealed through Facebook records, that Sean Hewitt refers to himself as "Cut Throat." Specifically, on a Facebook chat, Sean Hewitt writes "I am Hyena Kut Throat." Hyena is believed to be a reference to the specific gang that Hewitt is a member of.

15. Additionally, Target Phone Number 1 is located in Simon's contacts as "Cut Throat."

16. The investigation has also revealed through Facebook records, a chat between gang members that stated that Cut Throat "was with" Simon the night of the Gas Station Robbery.

17. Based on my training and experience, I know that individuals who commit crimes with others, including robberies, commonly use mobile devices such as

4

cellular telephones to communicate with co-conspirators through voice calls, text messages, emails, and other means. I further know that individuals who steal property or possess stolen property commonly use mobile devices to arrange to conceal, sell, transport, or dispose of the stolen property.

18. In particular, the facts in this case suggest coordination between the robbers. At least two people were involved in the attempted robbery. It is highly probable that some or all of these people communicated with each other by cellular telephone in order to arrange the approach of and/or the departure from the location, division of proceeds from the robbery, and acquisition of weapons.

19. In my training and experience, monitoring the whereabouts of the cellular phone used by Sean Hewitt, or any individual who participates in robberies, while concurrently conducting other investigative steps, such as analyzing call detail records and SMS records, will likely lead to the identification of other participants in the robbery, including other co-conspirators.

20. In my training and experience, I have learned that Metro PCS (the "Service Provider") is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or

5

by triangulating on the device's signal using data from several of the provider's cell towers. Cell site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell site data is typically less precise that E-911 Phase II data.

21. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phones, including by initiating a signal to determine the location of the Target Cell Phones on the Service Provider's network or with such other reference points as may be reasonably available.

22. Based on my training and experience, I know that the Service Provider can collect cell site data about the Target Cell Phones.

## AUTHORIZATION REQUEST

23. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

24. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to

the subscriber or user of the Target Cell Phones would seriously jeopardize the ongoing investigation, by providing them with an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrants authorize the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

25.   I further request that the Court direct the Service Provider to disclose to the government any information described in Attachment B that is within the possession, custody, or control of the Service Provider. I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating signals to determine the location of the Target Cell Phones on the Service Provider's networks or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

26. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phones outside of daytime hours.

27. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor

known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
William Puskas
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me on October 19, 2018

   s/Cheryl L. Pollak

THE HONORABLE CHERYL L. POLLAK
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

## ATTACHMENT A

### Property To Be Searched

1. The cellular telephone assigned call number (646) 972-0786 ( "Target Cell Phone 1"), whose service provider is Metro PCS, a wireless telephone service provider headquartered in Richardson, Texas.

2. The cellular telephone assigned call number (646) 972-7232 ( "Target Cell Phone 2"), whose service provider is Metro PCS, a wireless telephone service provider headquartered in Richardson, Texas.

3. Information about the location of the Target Cell Phones that are within the possession, custody, or control of Metro PCS, including information about the location of the cellular telephone if any such cellular telephone is subsequently assigned a different call number.

## ATTACHMENT B

## Particular Things To Be Seized

### I. Prospective Location Information

All information about the location of the Target Cell Phones described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phones" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephones described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Metro PCS (the "Service Provider"), are required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phones on the Service Provider's networks or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

### II. Historical Cell-Site Information

#### A. Information to be Disclosed

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government, the following information pertaining to the Account listed in Attachment A for the time period January 1, 2018 1, 2018 through to August 1, 2018:

 a. The following information about the customers or subscribers of the

  Account:

  i. Names (including subscriber names, user names, and screen names);

    ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    iii. Local and long distance telephone connection records;

    iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

    v. Length of service (including start date) and types of service utilized;

    vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

    vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

    viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

    i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and information regarding the cell towers and sectors through which the communications were sent and received.

### B. Information to be Seized by the Government

All information described above in Section II to enable the government to determine Sean Hewitt's location from January 1, 2018 to August 1, 2018.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).